UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN MEADE,

      Plaintiff,

v.

RELIANCE FINANCIAL GROUP LLC
dba ASSURANCE FINANCIAL MANAGEMENT GROUP LLC,
REGIONAL FINANCIAL GROUP LLC
dba REGIONAL GROUP LLC,
ALLIED FINANCIAL GROUP, LLC,
ATLANTIC REGIONAL FINANCIAL, LLC,
CHARTER HOLDINGS, LLC,
PROGRESSIVE SOLUTIONS GROUP LLC,
ROBERT JUSTIN GREEN,
MICHAEL ARTHUR BOVINO,
CAMILA BARRAGAN BOVINO,
PATRICK JAMES RYAN,
and SHALIQUE ASHLEY MORTIMER,

      Defendants.

_____/

COMPLAINT

**I. Introduction**

1.     Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit credit card account and fake debt. Defendants are debt collectors and credit identity thieves who acquired and used the stolen information and counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution, and other adverse consequences, and extort the payment of money from plaintiff.

2.     Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.*,

and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq*.

3.      Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution, and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California; Jacksonville, Florida; Buffalo, New York; Atlanta, Georgia; Charlotte, North Carolina; and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe. See www.ftc.gov/news-events/press-releases/2015.

6.      On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-

releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a

felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification

of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful

activity that constitutes a violation of Federal law . . . ." The act defines a "means of

identification" to include an individual's "name, social security number, date of birth," and other

information. It is a violation of the FDCPA, DPPA, MRCPA, and MOC to violate a criminal

statute, such as the Identity Theft and Assumption Deterrence Act, in connection with the

attempt to collect an alleged debt.

## II.      Jurisdiction

8.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding

plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper

because the pertinent events took place here.

## III. Parties

9.      Plaintiff Justin Meade is an adult, natural person residing in Kent County,

Michigan. Mr. Meade is a "consumer" and "person" as the terms are defined and used in the

FDCPA. Mr. Meade is a "person" as the term is defined and used in the DPPA. Mr. Meade is a

"consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10.      Defendant Reliance Financial Group LLC ("Reliance"), also doing business as

Assurance Financial Management Group LLC, is a Delaware limited liability company, FEIN #

*****0098, formed on or about February 20, 2018. Reliance claims to be doing business at 1750

Highway 160 West Suite 101-296, Fort Mill, 29708, but the address is merely a private mailbox

rented by defendants from The UPS Store. Reliance, in documents filed with the State of

Michigan, claim to be doing business at 2285 South Michigan Road, Eaton Rapids, MI 48827,

but this is the address of Incorp. Services, Inc., a registered agent services company. Documents

filed by Reliance with the State of North Carolina list the telephone number for Reliance's

principal office as 910-508-0760. According to documents filed in the State of Michigan,

Reliance has designated Registered Agent Solutions, Inc. as its registered agent to accept service

of process. In documents filed with the State of California, Reliance lists its type of business as

"debt collection." In documents filed with the State of Texas, Reliance lists its purpose for

transacting business as "Collection Agency." Documents filed by Reliance in the States of

California, Michigan, North Carolina, Ohio, South Carolina, and Texas, all state that the

manager, governor, or owner, of Reliance is defendant Robert Justin Green. Reliance also does

business under the unregistered name of Asset Management Resolution or AM Resolution.

Reliance uses interstate commerce and the mails in a business the principal purpose of which is

the collection of debts. Reliance regularly collects or attempts to collect, directly or indirectly,

debts owed or due or asserted to be owed or due another. Reliance is a "debt collector" as the

term is defined and used in the FDCPA. Reliance is a "regulated person" as the term is defined

and used in MRCPA. Alternatively, Reliance is a "collection agency" and "licensee" as the terms

are defined and used in the MOC.

   11.  Reliance through its employees and agents directly and indirectly participated in

the efforts to collect an alleged debt from Mr. Meade that are described in this complaint,

including the unlawful acquisition and placement for collection of Mr. Meade's stolen account

information, and unlawful dissemination of Mr. Meade's stolen personal and financial

information.

4

12.     Defendant Regional Financial Group LLC ("Regional"), also doing business as Regional Group LLC, is a South Carolina limited liability company, State ID # 1581459, formed on or about September 6, 2013. Regional claims to be doing business at 624 Tyvola Road, Suite 103-276, Charlotte, NC 28217, but the address is merely a private mailbox rented by defendants from The UPS Store. Regional also claims to be doing business at 8410 Pit Stop Court NW, Suite 150, Concord, NC 28027, but the address is the location for Excelon Group LLC, a tax preparation company owned by the registered agent of Regional, Jon-Michael Devine. Documents filed by Regional with the State of North Carolina list the principal office telephone number as 302-743-3929.  According to documents filed by Regional with the State of North Carolina, the Managing Member and Organizer of Regional is defendant Robert Justin Green. Regional also does business under the unregistered name of Asset Management Resolution or AM Resolution. Regional uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Regional regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Regional is a "debt collector" as the term is defined and used in the FDCPA. Regional is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Regional is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

13.     Regional through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination of Mr. Meade's stolen personal and financial information.

14.     Defendant Allied Financial Group LLC ("AFG"), is a South Carolina limited

liability company, formed on or about March 18, 2013. AFG claims to be doing business at

14039 Hwy 84 E., Suite A-6-254, Indian Trail, NC 28079, but the address is merely a private

mailbox rented by defendants from The UPS Store. According to documents filed with the

United States Small Business Administration, AFG actually operates at 523 Purser Avenue,

Monroe, NC 28110. Documents filed by AFG with the State of North Carolina list the principal

office telephone number as 855-759-1943 x 250 and state that AFG operates as a "Call Center."

According to documents filed by AFG with the State of North Carolina, the Managing Member

and Organizer of AFG is defendant Michael Arthur Bovino. AFG also does business under the

unregistered name of Asset Management Resolution or AM Resolution. AFG uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

AFG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted

to be owed or due another. AFG is a "debt collector" as the term is defined and used in the

FDCPA. AFG is a "regulated person" as the term is defined and used in MRCPA. Alternatively,

AFG is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

  15. On April 13, 2020, AFG was approved by the Small Business Administration for

a PPP Loan in the amount of $543,000.00 through Truist Bank, dba Branch Banking & Trust

Company, to supposedly retain the jobs of 107 employees. The PPP application stated that AFG

is in the business of "Investment Advice."

  16. AFG through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including

the unlawful acquisition and placement for collection of Mr. Meade's stolen account

information, and unlawful dissemination of Mr. Meade's stolen personal and financial

information.

17.     Defendant Atlantic Regional Financial LLC ("ARF"), is a North Carolina limited liability company, formed on or about September 18, 2014. ARF claims to be doing business at 7427 Matthews Mint Hill Rd., Suite 105-295, Mint Hill, NC 28227, but the address is merely a private mailbox rented by defendants from The UPS Store. Documents filed by ARF with the State of North Carolina list the principal office telephone number as 877-759-1943 x350 and state that ARF operates as a "Call Center." According to documents filed by ARF with the State of North Carolina, the Managing Member and Organizer of ARF is defendant Michael Arthur Bovino. ARF also does business under the unregistered name of Asset Management Resolution or AM Resolution. ARF uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ARF regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ARF is a "debt collector" as the term is defined and used in the FDCPA. ARF is a "regulated person" as the term is defined and used in MRCPA. Alternatively, ARF is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

18.     ARF through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination of Mr. Meade's stolen personal and financial information.

19.     Defendant Charter Holdings LLC ("Charter"), is a North Carolina limited liability company, formed on or about July 17, 2014, and organized by non-party Jon-Michael Devine. Charter claims to be doing business at 7427 Matthews Mint Hill Rd., Suite 105-295, Mint Hill, NC 28227, but the address is merely a private mailbox rented by defendants from The UPS

Store. Documents filed by Charter with the State of North Carolina in 2016 list the principal office telephone number as 704-681-1765, state that Charter is in the business of "Collections," and state that defendant Camila Barragan Bovino is a Managing Member of Charter. Charter also uses the telephone number 716-604-5004, which is an area code for Buffalo, New York. Charter uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Charter regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Charter is a "debt collector" as the term is defined and used in the FDCPA. Charter is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Charter is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

20.     Charter through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination of Mr. Meade's stolen personal and financial information.

21.     Defendant Progressive Solutions Group LLC ("Progressive"), is a Delaware limited liability company, formed on or before July 3, 2019. Progressive claims to be doing business at 501 N Main St., #2773, Lancaster, SC 29720, but this is merely a private mailbox rented by defendants from The USP Store. According to documents filed with the United States Small Business Administration, Progressive actually does business at 1008 West Roosevelt Road, Suite I, Monroe, NC 28110. Documents filed by Progressive with the State of North Carolina in 2021 list the principal office telephone number as 716-388-4661, state that Progressive is in the business of operating a "Call Center," and state that defendant Patrick James

Ryan is a Managing Member of Progressive. The Business Office Manager of Progressive is defendant Shalique Ashley Mortimer. Progressive uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Progressive regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Progressive is a "debt collector" as the term is defined and used in the FDCPA. Progressive is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Progressive is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

22.     On May 1, 2020, Progressive was approved by the Small Business Administration for a PPP Loan in the amount of $47,952.00 through Wells Fargo Bank, National Association, to supposedly retain the jobs of 19 employees. The PPP application stated that Progressive is in the business of "Business Associations."

23.     Progressive through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination of Mr. Meade's stolen personal and financial information.

24.     Defendant Robert Justin Green is a natural person, age 37, purportedly residing at 8421 Shady Vale Lane, Huntersville, NC 28078. Mr. Green is an owner, officer, member, manager, employee, and agent of defendants Reliance and Regional. Mr. Green uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Green regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Green is a "debt collector" as the term is defined and

used in the FDCPA. Mr. Green is a "regulated person" as the term is defined and used in the

MRCPA. Alternatively, Mr. Green is a "collection agency" and "licensee" as the terms are

defined and used in the MOC.

25.     Mr. Green (a) created the collection policies and procedures used by defendants

and their employees and agents, in connection with their common efforts to collect consumer

debts, (b) managed or otherwise controlled the defendants' daily collection operations, (c)

oversaw the application of the collection policies and procedures used by defendants and their

employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by

defendants and their employees and agents to collect debts from consumers, including the tactics

and scripts that were used to attempt to collect an alleged debt from Mr. Meade as stated in this

complaint, (e) ratified the unlawful debt collection practices and procedures used by defendants

and their employees and agents, in connection with their common efforts to collect consumer

debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt

collection practices used by defendants and their employees and agents, in their attempts to

collect an alleged debt from Mr. Meade as stated in this complaint.

26.     Mr. Green directly and indirectly participated in the efforts to collect an alleged

debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and

placement for collection of Mr. Meade's stolen account information, and unlawful dissemination

of Mr. Meade's stolen personal and financial information.

27.     Defendant Michael Arthur Bovino is a natural person, age 36, purportedly

residing at 1012 Kings Grant Way, Matthews, NC 28104. Mr. Bovino is an owner, officer,

member, manager, employee, and agent of defendants AFG, ARF, and Charter. Mr. Bovino uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. Mr. Bovino regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Bovino is a "debt collector" as the term is defined and used in the FDCPA. Mr. Bovino is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Bovino is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

28.     Mr. Bovino (a) created the collection policies and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the defendants' daily collection operations, (c) oversaw the application of the collection policies and procedures used by defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by defendants and their employees and agents, in their attempts to collect an alleged debt from Mr. Meade as stated in this complaint.

29.     Mr. Bovino directly and indirectly participated in the efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination of Mr. Meade's stolen personal and financial information.

30.     Defendant Camila Barragan Bovino is a natural person, age 36, purportedly residing at 1012 Kings Grant Way, Matthews, NC 28104. Ms. Bovino is an owner, officer,

member, manager, employee, and agent of defendants AFG, ARF, and Charter. Ms. Bovino uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Bovino regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Bovino is a "debt collector" as the term is defined and used in the FDCPA. Ms. Bovino is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Bovino is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

31.     Ms. Bovino (a) created the collection policies and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the defendants' daily collection operations, (c) oversaw the application of the collection policies and procedures used by defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by defendants and their employees and agents, in their attempts to collect an alleged debt from Mr. Meade as stated in this complaint.

32.     Ms. Bovino directly and indirectly participated in the efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination of Mr. Meade's stolen personal and financial information.

12

33. Defendant Patrick James Ryan is a natural person, age 38, purportedly residing at 2009 King Henrys Way, Matthews, NC 28104. Mr. Ryan is an owner, officer, member, manager, employee, and agent of defendant PSG. Mr. Ryan uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Ryan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Ryan is a "debt collector" as the term is defined and used in the FDCPA. Mr. Ryan is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Ryan is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

34. Mr. Ryan (a) created the collection policies and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the defendants' daily collection operations, (c) oversaw the application of the collection policies and procedures used by defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Meade as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by defendants and their employees and agents, in their attempts to collect an alleged debt from Mr. Meade as stated in this complaint.

35. Mr. Ryan directly and indirectly participated in the efforts to collect an alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination

of Mr. Meade's stolen personal and financial information.

36.     Defendant Shalique Ashley Mortimer is a natural person, age 30, purportedly

residing at 386 Quarry Road, Monroe, NC 28112. Ms. Mortimer is an owner, officer, member,

manager, employee, and agent of defendant Progressive. Ms. Mortimer uses interstate commerce

and the mails in a business the principal purpose of which is the collection of debts. Ms.

Mortimer regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. Ms. Mortimer is a "debt collector" as the term is defined and

used in the FDCPA. Ms. Mortimer is a "regulated person" as the term is defined and used in the

MRCPA. Alternatively, Ms. Mortimer is a "collection agency" and "licensee" as the terms are

defined and used in the MOC.

37.     Ms. Mortimer (a) created the collection policies and procedures used by

defendants and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the defendants' daily collection operations,

(c) oversaw the application of the collection policies and procedures used by defendants and their

employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by

defendants and their employees and agents to collect debts from consumers, including the tactics

and scripts that were used to attempt to collect an alleged debt from Mr. Meade as stated in this

complaint, (e) ratified the unlawful debt collection practices and procedures used by defendants

and their employees and agents, in connection with their common efforts to collect consumer

debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt

collection practices used by defendants and their employees and agents, in their attempts to

collect an alleged debt from Mr. Meade as stated in this complaint.

38.     Ms. Mortimer directly and indirectly participated in the efforts to collect an

alleged debt from Mr. Meade that are described in this complaint, including the unlawful acquisition and placement for collection of Mr. Meade's stolen account information, and unlawful dissemination of Mr. Meade's stolen personal and financial information.

39.     Defendants and their employees and agents use multiple telephone numbers to operate their credit identity theft and debt collection scam, including: 616-202-2251; 704-681-1765; 716-388-4661; 716-604-5004; 800-250-6536; 844-339-5633; 855-410-6851; 855-513-1285; 855-759-1943; 877-759-1943; and 888-210-2342.

40.     Defendants and their employees and agents use multiple, unregistered aliases to operate their credit identity theft and debt collection scam, including: AM Resolution, Asset Management, Proceedings Office, RFG-Regional, Regional Processing, Jeff Walker, and Steven Prescott.

41.     Defendants Reliance, Regional, AFG, ARF, Charter, Progressive, Mr. Green, Mr. Bovino, Ms. Bovino, Mr. Ryan, and Ms. Mortimer, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such a way that they are collecting debts for the benefit of each other, making each participant jointly and severally liable for the unlawful acts of each of the other participants.

42.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. See, e.g., *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.*, 15

F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.*, No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

43.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). See *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC*, 847 F.Supp.2d 994, 1004-06 (W.D. Mich. 2012).

**IV. Facts**

44.     On June 4, 2015, plaintiff Justin Meade allegedly obtained a loan for a term of approximately fourteen days, via the internet, from an entity registered to transact business in Michigan under the assumed name CashNetUSA, Mr. Meade borrowed approximately $400.00, structured as a "payday loan," in a transaction made pursuant to the Michigan Deferred Presentment Service Transaction Act, M.C.L. § 487.2121 *et seq.* The loan was made at an annualized rate of more than 300 percent. Mr. Meade was obligated to repay CashNetUSA the sum of $454.45. CashNetUSA assigned the transaction an original account number 16455706.

45.     Mr. Meade used the borrowed money solely to purchase goods and services for personal, family and household purposes. Any resulting obligation of Mr. Meade to repay the borrowed money was a "debt" as the term is defined and used in the FDCPA, MRCPA, and MOC.

46.     Mr. Meade became unable to repay the debt.

47.     CashNetUSA declared the account in default.

48.     CashNetUSA charged off the account.

49.     On or about May 27, 2016, CashNetUSA sold the charged-off account to non-party National Credit Adjusters, LLC ("NCA"). NCA assigned the account an internal and alternate NCA account number 12570224.

50.     When CashNetUSA sold the charged-off account to NCA, the account had an alleged unpaid balance of $454.45.

51.     On or about January 26, 2018, NCA sold the charged-off account to non-party NorAm Capital Holdings, Inc. ("NorAm").

52.     On or about February 1, 2018, NorAm sold the charged-off account to non-party Debt Management Holdings, LLC ("DMP"). DMP is a Delaware limited liability company, with its principal office located at 6400 Sheridan Drive, Suite 100, Amherst, New York 14221. DMP is owned and controlled by non-parties Adam Donald March and Daniel J. Valentine or is owned and controlled by entities owned and controlled by Mr. March and Mr. Valentine. DMP uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. DMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another

53.     On or about February 1, 2018, DMP placed the charged-off account for collection

with non-party Capital Management Holdings, LLC ("CMH"). CMH is a New York limited

liability company, with its principal office located in or around Buffalo or Staten Island, New

York. CMH is owned and controlled by non-parties Daniel D'Elia and Richard J. Fiel. CMH

uses interstate commerce and the mails in a business the principal purpose of which is the

collection of debts. CMH regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another.

54.     DMP maintains an internet website at www.dmpcollections.com. The website

contains a link through which consumers can look up accounts purchased by DMP and placed by

DMP for collection with other entities. According to the DMP website, Mr. Meade's charged-off

CashNetUSA account "was transferred to Capital Management Holdings – 866-255-5571, if

their Phone Number does not work, please call back to DMP at 800-883-9067 and press number

4 for customer service during normal working hours."

55.     Telephone calls placed to CMH at 866-255-5571 are answered with a pre-

recorded greeting that states: "Hello and thank you for calling Elite Debt Brokers. This

communication is an attempt to collect a debt. Any information obtained will be used for that

purpose."

56.     Non-party Elite Debt Brokers, LLC ("EDB") is a Delaware limited company,

with its principal office located in or around Buffalo or Staten Island, New York. EDB is owned

and controlled by non-parties Daniel D'Elia and Richard J. Fiel. EDB uses interstate commerce

and the mails in a business the principal purpose of which is the collection of debts. EDB

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another.

57.     According to DMP, DMP is the current owner of Mr. Meade's charged-off

CashNetUSA account.

58.    According to DMP, from February 1, 2018 to the present, only CMH and EDB have been authorized to collect the account.

59.    According to CMH and EDB, none of the entities named as defendants in this complaint have ever been authorized to collect the account.

60.    Mr. Meade refuses to pay any money to CashNet USA or any other entity in connection with the account.

61.    Sometime along the way, the entities named as defendants in this complaint stole the CashNetUSA account information along with Mr. Meade's personal and financial information, or otherwise acquired the stolen CashNetUSA account information along with Mr. Meade's stolen personal and financial information, and used that stolen information to contact and threaten Mr. Meade with prosecution, litigation, and other adverse consequences, unless Mr. Meade paid money to defendants to settle an alleged, inflated debt, that defendants do not own and have no right to collect.

62.    On June 8, 2021, at approximately 9:44 a.m., defendants' employee and agent placed a call from telephone number 616-202-2251 to Mr. Meade's cellular telephone and left the following message on Mr. Meade's voice mail:

> Hello. This message is for Justin Meade. This is Jeff Walker contacting you in regards to a case that's in the process of being filed against you. I do need to make you aware that by law once your case number, which is 133-669. Once that does get filed in the county, it becomes a matter of public record. There would be an order of location at the residence. Now, Justin Meade does have the legal right to contact the proceedings office that is filing the case in the county. Their phone number is 855-410-6851. Once again, that's 855-410-6851. Now this is considered your legal notification by phone. Justin Meade will be located at the residence unless we are advised otherwise. Thanks, and good luck to you.

63.    On June 8, 2021, at approximately 9:53 a.m., defendants' employee and agent

placed a call from telephone number 616-202-2251 to Mr. Meade's sister-in-law's cellular

telephone and left the following message on Mr. Meade's sister-in-law's voice mail:

> Hello. This message is for Justin Sherrod. This is Jeff Walker contacting you in
> regards to a case that's in the process of being filed against Justin Meade.
> Records indicate that Justin Meade may be residing with you so I do need to
> make you aware by law that once Justin Meade's case number, which is 133-
> 669, once that does get filed, it becomes a matter of public record. There would
> be an Order of Location at the residence. Now Justin Meade does have the legal
> right to contact the Proceedings Office that is filing the case in the county. Their
> phone number is 855-410-6851. Once again, 855-410-6851. This is
> considered a legal notification by phone. Justin Meade will be located at the
> residence unless we are advised otherwise. Thanks, and good luck.

64.     On June 9, 2021, a return phone call was placed to defendants at telephone

number 855-410-6851. In the ensuing conversation, defendants' employee and agent, who

identified himself as Steven Prescott, a Compliance Officer with Asset Management, made the

following representations regarding Mr. Meade:

    a)  Mr. Meade owed $454.45 to CashNetUSA for an unpaid payday loan,

        account number 16455706.

    b)  Asset Management is a law firm.

    c)  Asset Management and its attorneys were retained by their client,

        CashNetUSA, to file a lawsuit against Mr. Meade to collect the alleged

        debt.

    d)  CashNetUSA had sent Asset Management two formal complaints to be

        formally filed with the court filed against Mr. Meade, with CashNetUSA

        as the named petitioner.

    e)  Once Asset Management filed the lawsuit, Mr. Meade would owe

        $2,104.36.

    f)   Defendants had placed calls to Mr. Meade and Mr. Meade's relatives for the purpose of verifying Mr. Meade's address so that Mr. Meade would not miss Mr. Meade's court date.

    g)   If Mr. Meade would agree to enter into a Deferred Legal Agreement and pay money to defendants by Visa or MasterCard, then defendants would waive all accrued interest, fees, and penalties, and have the lawsuit against Mr. Meade dismissed, but only for the civil liability.

65.   On June 9, 2021, for the purpose of identifying and pursuing the entities who had contacted and falsely threatened Mr. Meade with litigation, prosecution, and other adverse consequences, Mr. Meade authorized a payment to defendants, via debit card, in the amount of $100.00. According to the debit card's issuing bank, the payment was deposited in defendants' merchant account, maintained in the name RFG-Regional, also known as RFG Regional, located in North Carolina, telephone number 855-513-2185.

66.   On June 9, 2021, defendants used ebills@amresolution.org to send an email to Mr. Meade. The email contained a document titled "Asset Management Installment Notice." The Notice listed the following:

> Original Creditor: CASHNET USA
> ACCOUNT ID: 16455706
> BALANCE: $345.42
> ...
> 06/09/2021 $100.00 – Posted
> 06/23/2021 $172.71 – Pending
> 07/07/2021 $172.71 – Pending
>
> This letter is to confirm that our offices have approved the following installments. Once your final installment has cleared this account will be closed and paid in full.
>
> Once the final installment has cleared the account, this will be reported paid in full zero balance, to the proper credit reporting agencies, if applicable. Furthermore, you will be released of any financial and legal obligations pertaining to the above referenced account

and any remaining balance.
...
If we receive notification this valid charge is being disputed we will revert back to,
continue with any and all legal action set forth prior to entering into this legal agreement
with you.

Sincerely,
Asset Management

Email: ebills@amresolution.org              Phone: (855)309-2202.

The document was authored by defendant Shalique Ashley Mortimer. A copy of the email and

document are attached to this complaint as Exhibit A.

67.     None of the messages left by defendants' employees and agents on Mr. Meade's

voice mail stated that defendants are debt collectors or that defendants were calling in connection

with efforts to collect an alleged debt from Mr. Meade.

68.     Money deposited in defendants' merchant account is shared among and

distributed to the defendants named in this complaint, their employees and agents, and perhaps

others. The application that was provided by defendants to the acquiring bank and ISO to create

the merchant account will need to be obtained in discovery from Visa, and then the acquiring

bank and ISO, along with related bank statements, so that plaintiff can identity all entities that

receive distributions from the merchant account and are involved in defendants' credit identity

theft and debt collection scam.

69.     The use of the merchant account by defendants, and their employees and agents,

to violate multiple federal and state laws, and to commit fraud, violates the terms of the contract

between defendants and the acquiring bank, and violates the terms of the contracts between

defendants and Visa and MasterCard, and disqualifies these defendants from having a merchant

account.

70.     The above-described threats and representations made by defendants and their

employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained and stolen account and personal information.

71.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

72.     Defendants and their employees and agents falsely represented and falsely inflated the amount of Mr. Meade's alleged debt.

73.     Defendants and their employees and agents falsely represented to Mr. Meade that the amount of Mr. Meade's alleged debt was $2,104.36, which was more than the alleged, actual unpaid balance of $454.45.

74.     Defendants and their employees and agents falsely represented that defendants represent CashNetUSA.

75.     Defendants and their employees and agents falsely represented that they are a law firm.

76.     Defendants and their employees and agents falsely represented that they are lawyers.

77.     Defendants and their employees and agents are not licensed to practice law in any jurisdiction.

78.     Defendants and their employees and agents falsely represented that Mr. Meade owed a debt that was not owed.

79.     Defendants and their employees and agents falsely represented that they had the

right to collect the alleged debt.

80.     Defendants and their employees and agents falsely represented that defendants intended to file a lawsuit against Mr. Meade to collect the alleged debt.

81.     Defendants and their employees and agents falsely represented and falsely implied that defendants already had filed a lawsuit against Mr. Meade to collect the alleged debt.

82.     Defendants and their employees and agents falsely represented that a date had been scheduled for Mr. Meade to appear in court.

83.     Defendants and their employees and agents wrongfully represented and wrongfully implied that defendants intended to file a lawsuit against Mr. Meade to collect a debt that did not exist.

84.      Defendants did not intend to file a lawsuit against Mr. Meade in any Michigan court in efforts to collect the alleged debt.

85.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

86.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit being filed against Mr. Meade would "become a matter of public record."

87.     Defendants and their employees and agents falsely represented and falsely implied that an "Order of Location" was going to be issued by the court against Mr. Meade.

88.     Defendants and their employees and agents falsely threatened that if Mr. Meade did not contact defendants, then defendants and/or defendants' agents would be coming to Mr. Meade's residence in efforts to collect the alleged debt.

89.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade had committed a crime.

90.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade would be prosecuted if Mr. Meade did not pay money to defendants.

91.     Defendants and their employees and agents wrongfully represented and wrongfully implied that Mr. Meade's debt is accruing interest and would increase due to court costs and fees if he did not pay money to defendants.

92.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt. 15 U.S.C. § 1692d.

93.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person. 15 U.S.C. § 1692d(1).

94.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

95.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State. 15 U.S.C. § 1692e(1).

96.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

97.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. § 1692e(2)(B).

98.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that any individual is an attorney or that any communication is

25

from an attorney. 15 U.S.C. § 1692e(3).

99.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

100.    The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

101.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

102.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

103.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

104.    The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that documents are legal process. 15 U.S.C. § 1692e(13).

105.    The states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

106.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

107.    The FDCPA states that it is unlawful for a debt collector to collect any amount

unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

108.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 1692f(1).

109.    The FDCPA states that a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

110.    The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

111.    A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

112.    Defendants violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b), by placing the above-described call to Mr. Meade's sister-in-law's cellular telephone and leaving the above-quoted message on Mr. Meade's sister-in-law's voice mail, falsely stating that a lawsuit was being filed against Mr. Meade to collect an alleged debt.

113.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

114.    Defendants and their employees and agents failed to timely send to Mr. Meade a

notice containing the information required by 15 U.S.C. § 1692g(a).

115.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

116.    Defendants and their employees, managers, owners, agents, affiliates and coconspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

117.    Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made. *People v. Maranian*, 359 Mich. 361 (1960).

118.    Defendants and their agents and employees criminally attempted to extort money from Mr. Meade by threatening Mr. Meade with prosecution if Mr. Meade did not pay money to defendants. It is a violation of the FDCPA to commit a crime in connection with the collection of a debt.

119.    "Congress enacted the FDCPA because of 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors' that 'contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Macy v. GC Servs. Ltd.*, 897 F.3d 747, 756 (6th Cir. 2018) (quoting 15 U.S.C. § 1692(a)).

120.    Defendants and their agents and employees lied to Mr. Meade about the actual amount of the debt he owed, and provided additional false material information to Mr. Meade in

their attempts to collect a debt, violating his right to accurate information supplied from a debt collector as intended by Congress when passing the FDCPA.

121.    Defendants and their agents and employees invaded Mr. Meade's privacy when they left threatening and deceptive messages on voice mail in efforts to compel Mr. Meade to contact defendants under the false belief that Mr. Meade was in legal jeopardy.

122.    In connection with efforts to collect an alleged debt from Mr. Meade, defendants obtained and used personal information regarding Mr. Meade and his relatives that was obtained from a   subscription-based internet database, compiled and maintained by a company such as LexisNexis Risk Management, Inc. (Accurint), TransUnion (TLO), UDT Group, LLC (Delvepointe) or Interactive Data, LLC, with the database being derived in part from non-public motor vehicle records, and with access to the database governed and restricted by the Drivers Privacy Protection Act. Every time that a subscriber logs on to such a database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

123.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. Reno v. Condon, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

124.    The DPPA states:

> a)  Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
> b)  False representation. – It shall be unlawful for any person to make false

representation to obtain any personal information from an individual's

motor vehicle record. 18 U.S.C. § 2722.

125.    The DPPA states: "personal information" means information that identifies an

individual, including an individual's photograph, social security number, driver identification

number, name, address (but not the 5-digit zip code) [and] telephone number . . . 18 U.S.C. §

2725(3).

126.    The DPPA states: A person who knowingly obtains, discloses or uses personal

information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be

liable to the individual to whom the information pertains, who may bring a civil action in a

United States district court. 18 U.S.C. § 2724(a).

127.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained. 18 U.S.C. § 2721(b).

128.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Mr. Meade or his relatives.

129.    Defendants accessed a restricted database to unlawfully obtain, disclose and use

personal information regarding Mr. Meade and his relatives.

130.    Defendants made a false representation to the entity maintaining the database to

obtain personal information regarding Mr. Meade and his relatives that was derived from motor

vehicle records.

131.    Alternatively, the entity that obtained disclosed Mr. Meade's and his relatives'

personal information to defendants, made a false representation to the entity maintaining the

database to obtain personal information regarding Mr. Meade and his relatives that was derived

from motor vehicle records.

132.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723. It is a violation of the FDCPA to commit a crime in connection with the collection of a debt.

133.    Defendants knowingly obtained, disclosed, and used Mr. Meade's and his relatives' personal information, from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

134.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Meade's or his relatives' personal information obtained from motor vehicle records.

135.    No defendant had Mr. Meade's or his relatives' consent, permission, authorization, or waiver to obtain Mr. Meade's or his relatives' personal information obtained from motor vehicle records.

136.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County*, 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

137.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles*, 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

138.    All defendants, and their employees and agents, are engaged in a scheme, through which they (a) steal or purchase stolen consumer account information, (b) use that stolen information to acquire additional personal information regarding the consumers in violation of the DPPA, and (c) place calls to the consumers' telephones and use unlawful debt collection tactics to collect money from consumers in violation of the FDCPA and (where applicable) Michigan law.

139.    Defendants, and their employees and agents, each have intentionally and willfully violated the FDCPA, DPPA, MRCPA, and MOC.

140.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

141.    Each defendant shared Mr. Meade's personal and private financial information among the other defendants, as well as their employees and agents, knowing that the other defendants, as well as their employees and agents, would engage in the unlawful debt collection practices that are described in this complaint.

142.    Defendants have repeatedly engaged in the unauthorized practice of law, a crime in Michigan:

> A person shall not practice law or engage in the law business, shall not in any manner whatsoever lead others to believe that he or she is authorized to practice law or to engage in the law business, and shall not in any manner whatsoever represent or designate himself or herself as an attorney and counselor, attorney at law, or lawyer, unless the person is regularly licensed and authorized to practice law in this state. A person who violates this section is guilty of contempt of the supreme court, . . ." M.C.L. 600.916(1). "[P]unishment for contempt may be a fine of not more than $7,500.00, or imprisonment which . . . shall not exceed 93 days, or both[.]" M.C.L. 600.1715(1).

> It shall be unlawful for any corporation or voluntary association to . . . assume, use or advertise the title of lawyer or attorney, attorney-at-law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law, . . . or to advertise that either alone or together with or by or through any person whether a duly and regularly admitted attorney-at-law, or not, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel." M.C.L. 450.681. Any corporation or voluntary association violating the provisions of this section, and every officer, trustee, director, agent or employee of such corporation or voluntary association who directly or indirectly engages in any of the acts herein prohibited or assists such corporation or voluntary association to do such prohibited acts shall be guilty of a misdemeanor, and shall be punished by a fine of not to exceed 1,000 dollars or by imprisonment for a period of not to exceed 6 months, or by both[.]" *Id.*

It is a violation of the FDCPA to commit a crime in connection with the collection of a debt.

143.    As an actual and proximate result of the acts and omissions of defendants and

their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

### V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

144.    Plaintiff incorporates the foregoing paragraphs by reference.

145.    Each defendant has violated the FDCPA. Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a)  Defendants violated 15 U.S.C. § 1692b;

   b)  Defendants violated 15 U.S.C. § 1692c;

   c)  Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   d)  Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

   e)  Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

   f)  Defendants violated 15 U.S.C. § 1692g.

**Wherefore**, plaintiff seeks judgment against defendants for:

   a.  Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b.  Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d.  Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

146.  Plaintiff incorporates the foregoing paragraphs by reference.

a)  Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore**, plaintiff seeks judgment against defendants for:

a.  Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b.  Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c.  Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d.  An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e.  An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

f.  An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

g.  An order requiring defendants to provide plaintiff with the original of all documents pursuant to which defendants obtained plaintiff's stolen account information, so that plaintiff may take steps to determine the identity of all entities that have had possession of her stolen account information and thereby enable plaintiff to pursue those entities in efforts to protect plaintiff's credit identify from

being further compromised and harmed.

### Count 3 – Michigan Regulation of Collection Practices Act

147.    Plaintiff incorporates the foregoing paragraphs by reference.

148.    Each defendant has violated the MRCPA. Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a.    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b.    Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

c.    Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

d.    Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

e.    Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a.    Actual damages pursuant to M.C.L. § 445.257(2);

b.    Treble the actual damages pursuant to M.C.L. § 445.257(2);

c.    Statutory damages pursuant to M.C.L. § 445.257(2);

d.    Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e.   Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 4 – Michigan Occupational Code

149.    Plaintiff incorporates the foregoing paragraphs by reference.

150.    Each defendant has violated the MOC. Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

    a)   Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

    b)   Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

    c)   Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

    d)   Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

    e)   Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

    f)   Defendants violated M.C.L. § 339.918.

**Wherefore**, plaintiff seeks judgment against defendants for:

a.   Actual damages pursuant to M.C.L. § 339.916;

b.  Treble the actual damages pursuant to M.C.L. § 339.916;

c.  Statutory damages pursuant to M.C.L. § 339.916;

d.  Equitable relief pursuant to M.C.L. § 339.916; and

e.  Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: July 6, 2021

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
Attorneys for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com
RogersAttorney@gmail.com